**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**LARUE PERKINS,**

      **Plaintiff,**

**v.**                                **Case No.:  3:10-cv-00851-RBD-TEM**

**ROBERT TOLEN, individually;**          **DISPOSITIVE MOTION**
**JOHN RUTHERFORD, in his official**
**capacity as Sheriff of the Consolidated**
**City of Jacksonville, Florida; and**
**JAX LANES, INC.,**

      **Defendants.**
_____/

**DEFENDANT JAX LANES, INC.'S MOTION FOR SUMMARY**
**FINAL JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

      Defendant, *Jax Lanes, Inc.* (hereinafter referred to as "Jax Lanes"), by and through its undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully requests the Court to enter an Order granting it Summary Final Judgment, stating in support as follows:[1]

**I.**      **INTRODUCTION**

      This case arises out of the arrest of the Plaintiff by Officer Tolen in the early morning hours of January 20, 2008, in the parking lot of Jax Lanes, and the Plaintiff's

---

[1]      For purposes of this Motion for Summary Final Judgment And Memorandum of Law in Support, the Plaintiff, Larue Perkins, will be referred to as "the Plaintiff," whereas the Co-Defendants, Robert Tolen and John Rutherford, will be respectively referred to as "Officer Tolen" and "Sheriff Rutherford."

contentions of personal injury purportedly resulting from that arrest.  The issues before the Court concern Count IV of the Plaintiff's First Amended Complaint, brought pursuant to 42 U.S.C. § 1983 (contending that Jax Lanes allegedly conspired with Officer Tolen to infringe on the Plaintiff's rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the Constitution), and the Plaintiff's personal injury claims against Jax Lanes for alleged respondeat-superior vicarious liability for the alleged acts of Officer Tolen purportedly caused by false imprisonment (Count VII) and battery (Count VIII).[2]  The rules of law that will govern the resolution of this motion are well-settled and, in no uncertain terms, compel the entry of Summary Final Judgment in favor of Jax Lanes.

Specifically, a claim made pursuant to 42 U.S.C. § 1983 against a private party requires, as one of the indispensable elements of the action, evidence that the private party was acting at the time under the "color of state law."  *See, e.g., Martinez v. Ashtin Leasing, Inc.*, 417 Fed. Appx. 883, 884 (11th Cir. 2011) ("In an action for relief under § 1983, plaintiffs 'must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under the color of state law.'").  In order to establish an issue of fact on a claim of alleged conspiracy by a private party with the State to violate Constitutional rights, there must be evidence to satisfy the "nexus/joint action test," which must include evidence to substantiate that the private party and the State communicated about, and reached an

---

[2]    The Court dismissed, with prejudice, Count IX of the First Amended Complaint, which was the only other Count directed towards Jax Lanes.  *See* Order of November 17, 2011.

understanding or an agreement with respect to, a specific intent to deprive a person of his or her Constitutional rights.  ***Focus on the Family v. Pinellas Suncoast Transit Auth.***, 344 F.3d 1263, 1276 – 77 (11th Cir. 2003).  In other words, "'[t]o charge a private party with [s]tate action under this standard, the governmental body and the private party must be intertwined in a symbiotic relationship,'" and "that the symbiotic relationship must involve the 'specific conduct of which the plaintiff complains.'"  ***Id.*** (citing and quoting ***Rayburn v. Hogue***, 241 F.3d 1341, 1347 – 49 (11th Cir. 2001)).  In this case, as the following pages will explain in much greater detail, there was never a conversation between an employee of Jax Lanes and Officer Tolen regarding the arrest of the Plaintiff, let alone even a scintilla of evidence to support the contention that Jax Lanes acted in concert with, and was part of a symbiotic relationship with, Officer Tolen with respect to his decision to arrest the Plaintiff or the means and manner by which he elected to effectuate that arrest.

As alluded to above, with respect to Counts VII and VIII of the First Amended Complaint, the Plaintiff claims that Jax Lanes should be held vicariously liable for the alleged intentional torts or negligence of Officer Tolen purportedly causing personal injury to the Plaintiff.  However, the Plaintiff has couched those claims exclusively based on a theory of alleged respondeat-superior (i.e., employer-employee) responsibility.  It is undisputed in the record that Officer Tolen has never been, and was not on the night in question an "employee" of Jax Lanes, but instead was an independent contractor.  ***See*** Deposition of R. Tolen of February 16, 2011, at p. 123.  Consequently, because the record evidence unequivocally substantiates that Officer Tolen was not an employee of

3

Jax Lanes and, for that reason, Counts VII and VIII of the First Amended Complaint fail to state a cause of action as a matter of law, an Order should be entered granting Summary Final Judgment in favor of Jax Lanes.

## II.   UNDISPUTED FACTS

1.      Officer Tolen is an employee of the Jacksonville Sheriff's Office and has been so employed for approximately twenty-one (21) years.  Deposition of R. Tolen of February 16, 2011, at p. 5.

2.      In January of 2008, the relevant time frame, Officer Tolen was not an employee of Jax Lanes.  Deposition of R. Tolen of February 16, 2011, at pp. 123 – 24.

3.      Officer Tolen did not receive a W-2 from Jax Lanes, nor was he provided any fringe benefits, such as health benefits or otherwise, by Jax Lanes.  Deposition of R. Tolen of February 16, 2011, at p. 123.

4.      The Jacksonville Sheriff's Office has a division labeled by the Jacksonville Sheriff's Office as the "Secondary Employment Office."  Deposition of R. Tolen of February 16, 2011, at p. 119.

5.      An operational order issued by the Secondary Employment Office directs Jacksonville Sheriff's Officers to abide by the Jacksonville Sheriff's Office policies when performing off-duty police work.  Deposition of R. Tolen of February 16, 2011, at pp. 26 – 29.

6.      When an officer is deployed through the Secondary Employment Office, that officer provides off-duty police services at the businesses where the officer has been deployed.  Deposition of R. Tolen of February 16, 2011, at p. 41.

7.      Officer Tolen testified that "all [he does] is what the State of Florida says that [he] can do legally as a police officer."  Deposition of R. Tolen of February 16, 2011, at p. 42. Officer Tolen's presence at Jax Lanes was "as a law enforcement officer to enforce the laws of the State of Florida and the municipal ordinances of Jacksonville."  Deposition of R. Tolen of February 16, 2011, at p. 129.

8.      When Officer Tolen exercises his authority to arrest a person while at Jax Lanes, he does so based on the laws of the State of Florida, and no one at Jax Lanes tells him how to execute an arrest.  Deposition of R. Tolen of February 16, 2011, at pp. 124 – 25.

9.      In January of 2008, Mr. Matthew DiIorio was acting supervisor for Jax Lanes during the shift from 12:00 a.m. to 8:00 a.m.  Deposition of M. DiIorio of April 20, 2011, at pp. 6, 10 – 11.

10.     Mr. DiIorio observed the Plaintiff and Officer Tolen speaking with one another in the parking lot, after which time he observed Officer Tolen escort the Plaintiff away from the taxi cab van.  Deposition of M. DiIorio of April 20, 2011, at pp. 41 – 43, 51 – 53.

11.     Although Mr. DiIorio observed Officer Tolen speaking with the Plaintiff, he never testified that he, Mr. DiIorio, ever spoke with Officer Tolen about the Plaintiff at any point in time.  Deposition of M. DiIorio of April 20, 2011, at pp. 53 – 54, 57.

12.     Officer Tolen testified that he made two general announcements outside of Jax Lanes directing people to vacate the premises.  Deposition of R. Tolen of February 16, 2011, at pp. 84 – 85.  Thereafter, Officer Tolen and the Plaintiff had a brief conversation with one another.  Deposition of R. Tolen of February 16, 2011, at pp. 86 – 87.

13.     Officer Tolen then arrested the Plaintiff, and Officer Tolen testified that he did so because the Plaintiff was "trespass[ing] after warning" and for "disorderly intoxication." Deposition of R. Tolen of February 16, 2011, at p. 89.

14.     No one at Jax Lanes requested Officer Tolen to arrest the Plaintiff.  Deposition of R. Tolen of February 16, 2011, at p. 125.  Rather, Officer Tolen arrested the Plaintiff based on his, Officer Tolen's, independent exercise of discretion and authority. Deposition of R. Tolen of February 16, 2011, at p. 124 – 25.

**III.     MOTION FOR SUMMARY FINAL JUDGMENT**

    **A.     The Undisputed Facts Do Not Support a Contention that Jax Lanes Was a "State Actor," And, for that Reason, Cannot, as a Matter of Law, Be Found Liable for an Alleged Deprivation of Constitutional Rights Pursuant to 42 U.S.C. § 1983**

1.     Relying on the operation of 42 U.S.C. § 1983, Count IV of the First Amended Complaint asserts that Jax Lanes is allegedly liable for a purported violation of the Plaintiff's rights secured by the Fourth and Fourteenth Amendment to the United States' Constitution.   First Amended Complaint at ¶¶ 60 – 63.   The federal courts have "employed three distinct tests in determining whether the actions of a private entity are properly attributable to the state," including the "nexus/joint action test," which is the only test invoked by the Plaintiff in Count IV.   ***Focus on the Family v. Pinellas Suncoast Transit Auth.***, 344 F.3d 1263, 1277 (11th Cir. 2003).

2.     As the Memorandum of Law explains in great detail, the contents of which are reincorporated here by reference, the record evidence establishes that Jax Lanes is entitled to the entry of an Order granting it Summary Final Judgment as to Count IV of the First Amended Complaint, because the undisputed facts demonstrate that there was

not the requisite "nexus/joint action" between Jax Lanes and Officer Tolen to impose

liability on Jax Lanes pursuant to 42 U.S.C. § 1983. *See, e.g.,* Deposition of R. Tolen of

February 16, 2011, at p. 124 – 25.

> **B.      Counts VII and VIII of the First Amended Complaint Against Jax Lanes, Attempting to Impose Responsibility for the Purported Acts of Officer Tolen, Exclusively Invoke the Theory of Respondeat-Superior Vicarious Liability, And, Because the Undisputed Facts Reflect that Officer Tolen Was <u>Not</u> an Employee of Jax Lanes, those Counts Fail to State a Cause of Action as a Matter of Law**

1.      The second issue before the Court is uncomplicated:  whether Jax Lanes may be

held responsible based on a theory of respondeat superior for the alleged acts of Officer

Tolen purportedly causing personal injury to the Plaintiff.  As the Memorandum of Law

states in much greater detail, the contents of which are reincorporated here by reference,

because the record evidence establishes without dispute that Officer Tolen was an

independent contractor, and not an employee of Jax Lanes, the claims made in Counts

VII and VIII of the First Amended Complaint fail as a matter of law.  *See* Deposition of

R. Tolen of February 16, 2011, at pp. 123 – 24.

2.      Florida law is well-settled:  in order to substantiate a claim for alleged vicarious

liability based on a theory of respondeat-superior, there must be evidence that the alleged

employer and employee expressly agreed to enter into such a relationship, that the alleged

employer possessed the authority to control the precise details, means and manner of the

work to be performed (as opposed to merely the quality of the work or the results to be

obtained), the payment of wages and the power of dismissal.  *See, e.g., Sanchez v. Braun*

*& May Realty, Inc.*, 795 So. 2d 1006, 1008 (Fla. 4th DCA 2001).   Moreover, the

"distinction between an employee and an independent contractor turns on the power to control." ***Sanchez***, 795 So. 2d at 1008.

3.      In this case, the undisputed facts are quite simple and do not support a claim that Jax Lanes "employed" Officer Tolen.  More to the point, Officer Tolen testified in no uncertain terms that he and Jax Lanes did not enter into an employment agreement, that he was not employed by Jax Lanes in January 2008 and, at all times, was nothing more than an independent contractor.  ***See*** Deposition of R. Tolen of February 16, 2011, at pp. 123 – 24.

4.      Moreover, when a police officer through the Jacksonville Sheriff's Office agrees to provide law enforcement services at a specific business address, it is the Jacksonville Sheriff's Office, the laws of the State of Florida and the ordinances of the City of Jacksonville that direct the police officer in terms of his conduct.  ***See*** Deposition of R. Tolen of February 16, 2011, at pp. 26 – 28; 124.

5.      In brief summary, the testimony of Officer Tolen, which is undisputed in the record, establishes that there was neither an agreement between he and Jax Lanes to act as an employee of Jax Lanes, nor is there evidence that Jax Lanes possessed the authority to control Officer Tolen's conduct as a police officer.

## IV.     MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

### A.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part that "[a] party may move for summary judgment," and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making

a determination with regard to whether to grant a motion for summary final judgment, the

Court "view[s] all evidence and makes all reasonable inferences in favor of the

nonmoving party."  *In re Optical Tech., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001).

Moreover, "[a] moving party is entitled to summary judgment if the nonmoving party has

'failed to make a sufficient showing of an essential element of her case with respect to

which she has the burden of proof.'"  *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Further, "the nonmoving

party 'may not rely merely on allegations or denials in its own pleading; rather, its

response must . . . set out specific facts showing a genuine issue for trial.'"  *In re Delco,*

*Oil, Inc.*, 599 F.3d at 1258.  "As the Supreme Court has explained:  'When the moving

party has carried its burden under Rule 56(c), its opponent must do more than simply

show that there is some metaphysical doubt as to the material facts.'"  *Id.* (citing and

quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)).

   **B.     The Undisputed Facts Do Not Support a Contention that Jax Lanes
            Was a "State Actor," And, for that Reason, Cannot, as a Matter of
            Law, Be Found Liable for an Alleged Deprivation of Constitutional
            Rights Pursuant to 42 U.S.C. § 1983**

   Count IV of the First Amended Complaint, the first count purporting to assert a

cause of action against Jax Lanes, contends that Officer Tolen and Jax Lanes allegedly

"combined, conspired, confederated and agreed with each other to violate" the Plaintiff's

"rights to be free from unreasonable searches and seizures under the Fourth and

Fourteenth Amendments to the United States Constitution."  First Amended Complaint at

9

¶¶ 60 – 63.   Thus, the first issue before the Court concerns whether Jax Lanes, as a private entity, may be held responsible for an alleged deprivation of the Plaintiff's Constitutional rights.   As the reasoning below will elucidate further, based on the clear operation of the law and the undisputed facts of this case, the unequivocal answer to the first issue is, quite simply, "No."   Consequently, for the reasons stated herein, an Order should be entered granting Summary Final Judgment in favor of Jax Lanes as to Count IV of the First Amended Complaint.

As stated above, and relying on the operation of 42 U.S.C. § 1983, Count IV of the First Amended Complaint asserts that Jax Lanes is allegedly liable for a purported violation of the Plaintiff's rights secured by the Fourth and Fourteenth Amendment to the United States' Constitution.   "In an action for relief under § 1983, plaintiffs 'must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under the color of state law.'"   *Martinez v. Ashtin Leasing, Inc.*, 417 Fed. Appx. 883, 884 (11th Cir. 2011). Notably, though, the "'under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'"   *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276 – 77 (11th Cir. 2003) (citations omitted)).   Indeed, "'[o]nly in rare circumstances can a private party be viewed as a [s]tate actor for section 1983 purposes.'"   *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010) (citation omitted).

The federal courts have "employed three distinct tests in determining whether the actions of a private entity are properly attributable to the state," including "the public

function test," "the state compulsion test," and "the nexus/ joint action test." ***Focus on the Family***, 344 F.3d at 1277 (citation omitted).  "The nexus/joint action test applies where 'the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." ***Id.*** (citation omitted). Because the Plaintiff in this case has invoked only the "nexus/joint action test" in Count IV, this Memorandum of Law will be accordingly self-restricted to an analysis of that test.  "Consistent with the standard outlined in *Blum* [*v. Yaretsky*, 457 U.S. 991, 1004 (1982)], under the nexus/joint action test [the court] ask[s] 'whether the state has so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant to the enterprise." ***Id.*** at 1278 (citation and internal punctuation omitted).  In other words, "'[t]o charge a private party with [s]tate action under this standard, the governmental body and the private party must be intertwined in a symbiotic relationship." ***Id.*** (citation omitted).

Further, not only has the "Supreme Court [reasoned] that the symbiotic relationship must involve the 'specific conduct of which the plaintiff complains," ***Id.*** (emphasis added and citation omitted), but there must also be affirmative evidence that the private entity was "'act[ing] in concert with the state officials in depriving a plaintiff of constitutional rights." ***Arline v. City of Jacksonville***, 359 F. Supp. 2d 1300, 1311 (M.D. Fla. 2005) (emphasis added and citation omitted).  Stated another way, in order to "prove a conspiracy under § 1983 in order to satisfy the joint action test, [t]he plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff [of] his or her rights." ***Id.*** at 1312 (citations omitted).

11

In addition, in order to "establish the 'understanding' or 'willful participation' required to show a conspiracy," there must be "some evidence of agreement between the defendants." *Id.* (citing ***Bailey v. Bd. of County Comm'rs of Alachua County***, 956 F.2d 1112, 1122 (11th Cir. 1992) ("The linchpin for conspiracy is agreement which presupposes communication.") (emphasis added)).  "For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" *Id.* (citation omitted).  As an opinion from the United States District Court for the Middle District of Florida recently expressed, "it is a daunting task for a plaintiff to show that the state and a private actor were engaged in joint action sufficient to trigger state actor liability under § 1983." ***Woods***, 511 F. Supp. 2d at 1273 (emphasis added).  The Plaintiff in this case does not, indeed cannot, surmount that "daunting task," and, for that reason, Summary Final Judgment should be entered in favor of Jax Lanes.

More precisely, a review of the deposition testimony of both Officer Tolen and Mr. DiIorio, the manager at Jax Lanes that evening, reveals that the two never spoke to one another about the Plaintiff, let alone "establish[ed] [an] 'understanding'" or reached an "agreement" to conspire to deprive the Plaintiff of his Fourth or Fourteenth Amendment rights.  ***See, e.g., Arline***, 359 F. Supp. 2d at 1311.  Stated another way, Mr. DiIorio never requested Officer Tolen to effectuate an arrest of the Plaintiff; that decision was made exclusively by Officer Tolen in an independent exercise of his discretion and authority as an officer licensed by the State of Florida and the City of Jacksonville to enforce the laws of the State and the ordinances of Jacksonville:

Q       All right.  As far as how you execute those police services, that's up to you; is that right?

A       Once they – once the person has violated a law –

Q       Right.

A       – with the State of Florida, then yeah.  Then at that point I'm obligated by the Sheriff's Office to act on it.

Q       Okay.

A       And then at that point I have to do everything under the State of Florida's law statutes that I'm bound by with that and also the municipal ordinances.

Q       Okay.

A       You know, I mean, I can't – at that point – I was reading here recently an operational order with the secondary employment.  I have to then do what they law says that I have to do, regardless of what requests might be made of me by the person that's actually hiring me to do it.

Q       Okay.  So if you're going to effectuate an arrest on someone at Jax Lanes, you're going to follow the law and what you've been taught in terms of your training; is that right?

A       Yes, sir.  I'm mandated to do that, so I have to.

Q       All right.  No one at Jax Lanes is going to tell you how to execute that arrest.

A       That is correct, they are not.

Q       Okay.  And as far as the evening in question, as I understand it, no one at Jax Lanes said, We want you to go and arrest Mr. Perkins.

A       That's right, no one did.

Q       That was something that you, in your discretion, decided to do.

A       Yes, sir.

13

Deposition of R. Tolen of February 16, 2011, at p. 124 – 25 (emphasis added). Stated simply and succinctly, there is not even a scintilla of evidence to suggest, with respect to the arrest of the Plaintiff, or the manner in which that arrest was effectuated, that Officer Tolen and Jax Lanes: (1) were operating in a "symbiotic relationship," *Focus on the Family*, 344 F.3d at 1278; (2) were "'acting in concert'" to deprive the Plaintiff of his Constitutional rights, *Arline*, 359 F. Supp. 2d at 1311 (citation omitted); (3) had "'reached an understanding' to deny the plaintiff [of] his or her rights," *Id.* at 1312 (citations omitted); (4) that Jax Lanes was a "'willful participa[nt]'" in any alleged act intended to deprive the Plaintiff of his Constitutional rights, *Id.* (citation omitted); or (5) that Jax Lanes and Officer Tolen had ever once communicated about any alleged intent to infringe on the Plaintiff's Constitutional rights. *Id.* (citing *Bailey*, 956 F.2d at 1122 ("The linchpin for conspiracy is agreement which presupposes communication.") (emphasis added)). In brief summary, the Plaintiff's claims in Count IV of the First Amended Complaint fail as a matter of law in every single regard, and, for that reason, Summary Final Judgment should be entered in favor of Jax Lanes.

The Federal Courts of Florida are replete with opinions supporting the above-stated conclusion. For example, much like in this case, the Middle District of Florida entered an Order granting Summary Final Judgment in favor of a defendant doctor in *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300 (M.D. Fla. 2005). Specifically, the plaintiff in that case, a father, brought a non-responsive infant to the hospital who was later pronounced deceased. *Id.* at 1302 – 04. The physician, and others at the hospital, who treated the infant determined that there was evidence of possible child abuse

14

(including broken ribs and bilateral cerebral hemorrhaging), thereby compelling by law contact with the authorities.  *Id.*  After the authorities discussed the issues with the plaintiff at the hospital, he voluntarily accompanied the authorities to the police station, at which time the authorities procured a written confession from the plaintiff.  *Id.*  The plaintiff contended in his criminal trial that the confession was fraudulently obtained, and the jury ultimately acquitted him of charges of murder.  *Id.*  Thereafter, he pursued an action against multiple defendants, including the City of Jacksonville, the officers involved in the arrest and the private-party physician.  *Id.* at 1302 – 05.

Upon consideration of the dispositive motion and the undisputed facts, the Middle District granted Summary Final Judgment in favor of the private-party physician, and, in doing so, rendered an Order containing a very succinct pronouncement of the law on the issue of alleged private party liability under 42 U.S.C. § 1983.  *Id.* at 1311 – 13.  In particular, reciting to many of the black letter rules of law reflected in the preceding pages of this Motion and Memorandum, the Middle District reasoned that, even though the private-party physician certainly contacted the authorities and coordinated with them pursuant to the laws of the State of Florida, "there [was] no evidence that the parties reached any understanding to deprive [the plaintiff] of his constitutional rights," "[n]or [was] there any evidence that the parties reached an agreement to falsify [the plaintiff's] confession so as to lead to [the plaintiff's] improper prosecution."  *Id.* at 1312.[3]  It is for

---

[3]      The ***Arline*** opinion represents only one of a great many other analogous decisions rendered by the District Courts of Florida and the Eleventh Circuit Court of Appeals.  ***See also, e.g., Martinez v. Ashtin Leasing, Inc.***, 417 Fed. Appx. 883, 884 – 85 (11th Cir. 2011); ***Wilson v. Dollar-Thrifty Auto Group-South Fla. Transp.***, 286 Fed. Appx. 640, 641 – 42 (11th Cir. 2008); ***Dye v. Radcliff***, 174 Fed. Appx. 480, 482 – 83 (11th Cir.

all of these reasons, and based on the black letter rules of law, that Jax Lanes respectfully requests the Court to enter an Order granting it Summary Final Judgment as to Count IV of the First Amended Complaint.

      **C.**    **Counts VII and VIII of the First Amended Complaint Against Jax Lanes, Attempting to Impose Responsibility for the Purported Acts of Officer Tolen, Exclusively Invoke the Theory of Respondeat-Superior Vicarious Liability, And, Because the Undisputed Facts Reflect that Officer Tolen Was <u>Not</u> an Employee of Jax Lanes, those Counts Fail to State a Cause of Action as a Matter of Law**

The second issue before the Court is uncomplicated:  whether Jax Lanes may be held responsible based on a theory of respondeat superior for the alleged acts of Officer Tolen purportedly causing personal injury to the Plaintiff.  Because the record evidence establishes without dispute that Officer Tolen was an independent contractor, the claims made in Counts VII and VIII of the First Amended Complaint fail as a matter of law.  ***See*** Deposition of R. Tolen of February 16, 2011, at pp. 123 – 24.  In the pages that follow, this portion of the Memorandum of Law will briefly discuss the elements that are necessary to establish the existence of a respondeat-superior relationship, it will identify the record evidence demonstrating that there was no such relationship in this case, and it will refer to the controlling law on the issue.  Furthermore, even if there were some means of attaching vicarious liability against Jax Lanes for the alleged tortious conduct of Officer Tolen (which there is not based on the express allegations in the First Amended Complaint), any such liability is severed in this case, because there is no dispute that Jax Lanes could not, as a matter of law, exercise any measure of control over the means or

2006); ***Green v. Abony Bail Bond***, 316 F. Supp. 2d 1254, 1255 – 58 (M.D. Fla. 2004); ***Dolin v. West***, 22 F. Supp. 2d 1343, 1350 – 51 (M.D. Fla. 1998); ***Mann v. Hillsborough County Sheriff's Office***, 946 F. Supp. 962, 964 – 71 (M.D. Fla. 1996).

manner by which Officer Tolen conducts himself as an officer of the law or effectuates an arrest, and, because the Plaintiff contends that Officer Tolen acted intentionally and with blatant disregard for the Plaintiff's rights, Officer Tolen would be deemed as a matter of law to have been on a "frolic" of his own.  ***See, e.g., Special Olympics Fla., Inc. v. Showalter***, 6 So. 3d 662 (Fla. 5th DCA 2009) ("Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability.").

Florida law is well-settled:  in order to substantiate a claim for alleged vicarious liability based on a theory of respondeat-superior, there must be evidence that the alleged employer and employee expressly agreed to enter into such a relationship, that the alleged employer possessed the authority to control the precise details, means and manner of the work to be performed (as opposed to merely the quality of the work or the results to be obtained), the payment of wages and the power of dismissal.  ***See, e.g., Sanchez v. Braun & May Realty, Inc.***, 795 So. 2d 1006, 1008 (Fla. 4th DCA 2001) ("The elements necessary to establish a master-servant relationship are the selection and engagement of the servant, the payment of wages, the power of dismissal, and the control of the servant's conduct.").   Moreover, the "distinction between an employee and an independent contractor turns on the power to control."  ***Sanchez***, 795 So. 2d at 1008. Notably, the right of the purported employer to direct the "results" expected to be achieved, to conduct "occasional inspections of the work," to "inspect the job being performed to determine whether the worker is doing the quality of job he or she was hired to do," or to "require a certain standard of performance" <u>does not</u> establish an employer-

employee relationship.  ***4139 Mgmt., Inc. v. Dep't of Labor And Employment***, 763 So. 2d 514, 517 (Fla. 5th DCA 2000).   Rather, in order to sustain such an allegation, the plaintiff must uncover evidence to prove that a purported employer has the right to control the "details of the work."  ***Id.***; ***see also Chase Manhattan Mortgage Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A.***, 694 So. 2d 827, 832 (Fla. 4th DCA 1997) ("There is no evidence in the record that Chase ever controlled Abbey in the way that a principal controls an agent.  Again, the mere fact that Chase set standards for the mortgage paper it would be willing to purchase from Abbey did not amount to an agency control of Abbey by Chase.").

In this case, the undisputed facts are quite simple and do not support a claim that Jax Lanes "employed" Officer Tolen.  More to the point, in an effort to have an off-duty police officer physically located on a business's premises to offer immediate services as a police officer, if or when necessary, a business would coordinate for the presence of the police officer through the Jacksonville Sheriff's Office, who may or may not also assign a police officer individually as a scheduler for a particular business.  Deposition of R. Tolen of February 16, 2011, at pp. 16 – 25.  Indeed, Officer Tolen testified in no uncertain terms that he and Jax Lanes did not enter into an employment agreement, that he was not employed by Jax Lanes in January 2008 and, at all times, was nothing more than an independent contractor:

> Q       You mentioned earlier that you are a private contractor or independent contractor of Jax Lanes; is that right?
>
> A       That's correct.
>
> Q       You're not an employee of Jax Lanes.

A        No.

Q        You don't' get a W2

A        No.

Q        You don't get fringe benefits.

A        Health benefits, nothing.

Q        Health benefits, nothing like that.

A        No, sir.

Q        You're not an employee of Jax Lanes; is that right?

A        That's correct.

Deposition of R. Tolen of February 16, 2011, at pp. 123 – 24.  Moreover, when a police

officer through the Jacksonville Sheriff's Office agrees to provide law enforcement

services at a specific business address, it is the Jacksonville Sheriff's Office, the laws of

the State of Florida and the ordinances of the City of Jacksonville that direct the police

officer in terms of his conduct:

Q        Does the JSO give you any training about secondary employment?

A        I'm sure they – what do you mean "training"?

Q        I mean, do they tell you what to do when you go work secondary employment?

A        Yeah.  There's an operational order out there that covers it.

Deposition of R. Tolen of February 16, 2011, at pp. 26 – 27;

Q        What about as far as like use of force?  If you're working secondary employment, does the regular JSO use of force policies apply to your use of force out during your secondary employment?

19

> A    Once you're – <u>when you're working secondary employment, you're a police officer 100 percent</u>.  Anything that applies when you're a regular police officer applies when – a regular police officer.  Anything that applies when you're working like a regular beat or a regular assignment also applies whenever you're working a secondary employment job.  <u>So there is no difference</u>.

Deposition of R. Tolen of February 16, 2011, at p. 28 (emphasis added);

> Q    And as far as – I think you told us earlier that you were hired to perform police services at Jax Lanes, and you've walked us through that process in terms of what you do, typically, when you get to the bowling lanes each night; is that right?
>
> A    That is correct.
>
> Q    All right.  As far as how you execute those police services, that's up to you; is that right?
>
> A    Once they – once the person has violated the law –
>
> Q    Right.
>
> A    – with the State of Florida, then, yeah.  Then at that point I'm obligated by the Sheriff's Office to act on it.

Deposition of R. Tolen of February 16, 2011, at p. 124.  In other words, neither Jax Lanes, nor any other private entity or person, may exercise any measure of control over Officer Tolen's decision to arrest or not arrest a person or the means and manner by which Officer Tolen would effectuate that arrest:

> Q    Okay.  So if you're going to effectuate an arrest on someone at Jax Lanes, you're going to follow the law and what you've been taught in terms of your training; is that right?
>
> A    Yes, sir.  I'm mandated to do that, so I have to.
>
> Q    All right.  No one at Jax Lanes is going to tell you how to execute that arrest.
>
> A    That is correct, they are not.

20

Deposition of R. Tolen of February 16, 2011, at p. 125.  In brief summary, the testimony of Officer Tolen, which is undisputed in the record, establishes that there was neither an agreement between he and Jax Lanes to act as an employee of Jax Lanes, nor is there evidence that Jax Lanes possessed the authority to control Officer Tolen's conduct as a police officer.  *See Sanchez*, 795 So. 2d at 1008 (stating the elements of an employment relationship, which are distinct from an alleged agency relationship).  Because the Plaintiff's claims of alleged vicarious responsibility against Jax Lanes in Counts VII and VIII of the First Amended Complaint rest solely on a claim of respondeat-superior liability, and, because the record evidence establishes beyond dispute that Officer Tolen was not an employee of Jax Lanes, an Order should be entered granting Jax Lanes Summary Final Judgment.

Although specific reference to case law may be unnecessary, the Fifth District addressed a set of circumstances similar to the issue at hand.  *4139 Mgmt., Inc.*, 763 So. 2d at 516 – 18.  In *4139 Mgmt., Inc.*, the district court reversed a finding of the Division of Unemployment Compensation (hereinafter referred to as "the DUC") that a Ms. Alison Stratton, who had worked as a housekeeper/maid, was an employee of a condominium association (hereinafter referred to as "the Association").  *Id.* at 516.  Notably, the district court ruled as a matter of law that significant portions of information relied upon by the DUC in arriving at its determination were insufficient to create an employment relationship between the Association and Ms. Stratton, including:  (1) testimony that the Association's "property manager took her to the units and showed her what was expected" of her; (2) that the "property manager made occasional inspections of the

work" performed by Ms. Stratton; (3) the existence of a document "entitled 'Maid's Clearance Report,'" which set forth a "checklist of jobs which [were] to be done in each unit;" and (4) the existence of a document "entitled . . . 'Maid's Job Description,'" which "listed what cleaning products were to be used, prohibited the use of the unit's cleaning supplies or cleaning apparatus, listed the duties maids often forget, and directed maids to note damages." *Id.* at 517 – 18.

As to the first and second prongs of the preceding list, the district court noted that merely orienting an individual to the expectations of the occupation and conducting "occasional inspections of the work" did not "make [Ms.] Stratton an employee." *Id.* at 517. Indeed, an entity retaining the services of an independent contractor "has the right to inspect the job being performed to determine whether the worker is doing the quality of job he or she was hired to do." *Id.* Stated slightly differently, "[a]n employer does not give up the right to require a certain standard of performance just because the worker is an independent contractor." *Id.* Moreover, as to the latter two points on the preceding list, the district court recognized that these documents did not dictate to "the maids how to do their work nor [did they] indicate any exercise of control over the means used to achieve the results." *Id.* at 517 – 18. The Fifth District concluded that the "evidence simply [did] not suggest an employer/employee relationship." *Id.* at 518; *see also City of Boca Raton v. Mattef*, 91 So. 2d 644, 647 (Fla. 1956) (stating the elements of a master-servant relationship, including the purported employer's right to prescribe the precise details of the execution of the work to be done); *Flagstar Cos v. Cole-Ehlinger*, 909 So. 2d 320, 322 (Fla. 4th DCA 2005) (reversing and remanding, declaring that "[t]here

simply was no competent evidence establishing that the party responsible for the repair was controlled by or an employee of" the underlying defendant).

In much more compelling circumstances in this case, Officer Tolen unequivocally confirmed that he was not an employee of Jax Lanes and, at all times relevant, that he conducted himself as an officer of the law in accord with the laws of the State of Florida and the ordinances of the City of Jacksonville, consistent with the policies established by the Jacksonville Sheriff's Office, and not subject to the control of any employee of Jax Lanes.   Deposition of R. Tolen of February 16, 2011, at pp. 123 – 25.   Further, the metaphorical canyon between "the skill required" to carry out the responsibilities of a housekeeper/ maid, as opposed to those of a highly-trained officer of the law is as wide as it is deep, and there is no evidence that Jax Lanes directed, nor had the authority to direct, Officer Tolen in the pursuit of his police services.   *See 4139 Mgmt., Inc.*, 763 So. 2d at 516 (noting that one of the factors considered in analyzing whether an independent contractor relationship exists is "the skill required in the particular occupation")).   In short, there are no disputed issues of material fact, and Jax Lanes is entitled to judgment in its favor as a matter of law.[4]

---

[4]   In addition to all of the preceding, even if the Plaintiff were capable of stating an action for alleged vicarious liability against Jax Lanes (which he cannot), the Plaintiff's claims that Officer Tolen acted with intent to inflict personal injury preclude the Plaintiff, as a matter of law, from attempting to impose liability on Jax Lanes for such conduct. *See, e.g., Special Olympics Florida, Inc.*, 6 So. 3d at 665 (reflecting the principle that "[g]enerally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment, and, therefore, insufficient to impose vicarious liability on the employer").

## V.        CONCLUSION

**WHEREFORE**, for the reasons stated, Jax Lanes respectfully requests the Court to enter Summary Final Judgment in its favor as to Counts IV, VII and VIII of the First Amended Complaint, and for such other relief as may be appropriate.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** on February 1, 2012, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system, which will forward a copy electronically to:  **WILLIAM J. SHEPPARD, ESQUIRE**, *as Attorneys for Plaintiff, email:*  <u>sheplaw@att.net</u>**, STEPHEN J. POWELL, ESQUIRE,** *Assistant General Counsel and Attorneys for Defendant, Rutherford, Email:*  <u>spowell@coj.net</u> **and PAUL A. DARAGJATI, ESQUIRE,** *General Counsel for the Fraternal Order of Police and Counsel for Defendant, Tolen, Email*:  <u>pdaragjati@fop530.com</u>.

> **SAALFIELD, SHAD, JAY, STOKES, INCLAN, STOUDEMIRE & STONE, P.A.**
>
>   /s/ Joseph B. Stokes, III, Esquire                    .
> **JOSEPH B. STOKES, III, ESQUIRE**
> Florida Bar No. 897183
> **TRAVASE L. ERICKSON, ESQUIRE**
> Florida Bar No. 0017822
> 245 Riverside Ave., Suite 400
> Jacksonville, Florida 32202
> Tel: (904) 355-4401:Facsimile: (904) 355-3503
> Email:  joseph.stokes@saalfieldlaw.com
> Email:  travase.erickson@saalfieldlaw.com