**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**LARUE PERKINS,**

       **Plaintiff,**

**-vs-**                                             **Case No:  3:10-cv-851-J-37TEM**

**ROBERT TOLEN, JOHN**
**RUTHERFORD and JAX LANES, INC.,**

       **Defendants.**
_____/

## ORDER

This cause is before the Court on Defendant Jax Lanes, Inc.'s ("Jax Lanes") Motion for Summary Final Judgment and Memorandum of Law in Support (Doc. No. 38), filed on February 1, 2012. On February 21, 2012, Plaintiff Larue Perkins ("Mr. Perkins") filed his response (Doc. No. 47, pp. 29-35), and on March 7, 2012, Jax Lanes filed its reply (Doc. No. 55). After its careful review of the parties' submissions and the relevant legal authority, the Court grants Jax Lanes's motion.

## I.  BACKGROUND

In January of 2008, Mr. Perkins accompanied his friends to the Jax Lanes bowling alley in Jacksonville, Florida, arriving at approximately 9:00 p.m. Defendant Robert Tolen ("Officer Tolen"), an officer with the Jacksonville Sheriff's office, was working his secondary employment for Jax Lanes at the time. At some point in the evening, while Mr. Perkins was outside waiting for a taxicab, a fight broke out in the bowling alley resulting in additional police officers responding to the scene. Some time after, Mr. Perkins and one

of his friends went back inside the bowling alley to assist one of their companions who was sick in the bathroom.  Later, as Mr. Perkins and his friends were about to leave in a taxicab, he encountered Defendant Tolen.  As he attempted to enter the taxicab, Mr. Perkins alleges, Defendant Tolen grabbed him from behind in a bear hug and slammed him to the concrete, face first.  According to Mr. Perkins, he suffered injuries, including lacerations and a fractured jaw.  Defendant Tolen then straddled Mr. Perkins, put his hands behind his back, and handcuffed him.  Mr. Perkins was arrested on the charges of trespass, resisting an officer without violence to his person, and disorderly intoxication.  After he was taken to jail, Mr. Perkins was sent to Shands Hospital to receive medical care for his injuries.  On September 1, 2010, Mr. Perkins was acquitted of all charges.[1]

In his First Amended Complaint, Mr. Perkins alleges the following federal claims pursuant to Title 42, United States Code, Section 1983: False Arrest in violation of the Fourth Amendment to the United States Constitution ("Constitution") against Officer Tolen in his individual capacity (Count I); Excessive Force in violation of the Fourth Amendment to the Constitution against Officer Tolen in his individual capacity (Count II); Municipal Liability against Defendant Rutherford in his official capacity (Count III); and, Conspiracy to Violate Civil Rights against Officer Tolen and Jax Lanes (Count IV).  In addition to the federal claims, Mr. Perkins also alleges the following state law claims: False Imprisonment against Defendant Rutherford (Count V); Battery against Defendant

---

[1] The above-mentioned facts are derived from Mr. Perkins's First Amended Complaint (ECF No. 26), filed on August 8, 2011.

- 2 -

Rutherford (Count VI); False Imprisonment against Defendant Jax Lanes (Count VII); and, Battery against Defendant Jax Lanes (Count VIII).  (*See generally* Doc. No. 26.)[1]

## II.   STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Evidence is reviewed in the light most favorable to the non-moving party.  *Fennell,* 559 F.3d at 1216 (citing *Forman*, 509 F.3d at 1356).  A moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (stating "conclusory allegations without specific

---

[1] In its November 17, 2011 Order, the Court dismissed with prejudice Mr. Perkins's negligence claim (Count IX) against Jax Lanes, Inc.  (*See* Doc. No. 31.)

supporting facts have no probative value"). This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the [C]ourt must deny the motion and proceed to trial." *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983)).

### III.   DEFENDANT JAX LANES'S MOTION FOR SUMMARY JUDGMENT

Jax Lanes moves for summary judgment in its favor on Counts IV, VII, and VIII of Mr. Perkins's First Amended Complaint. Count IV alleges that Officer Tolen and Jax Lanes conspired to violate Mr. Perkins's civil rights. In his Consolidated Response to Defendants' Motions for Summary Judgment (Doc. No. 47, p. 29), Mr. Perkins concedes the merits of Jax Lanes's argument regarding the conspiracy claim and agrees that summary judgment as to Count IV is appropriate. Accordingly, the Court GRANTS summary judgment in favor of Jax Lanes as to this count.

Counts VII and VIII allege state law claims of false imprisonment and battery against Jax Lanes under the *respondeat superior* vicarious liability theory. (*See* Doc. No. 26, pp. 12-14.) The sole issue before the Court, then, is whether, as a matter of law, Jax Lanes may be held responsible based on a theory of *respondeat superior* for the alleged acts of Officer Tolen that purportedly caused personal injury to Mr. Perkins.

In its motion, Jax Lanes asserts that "the record evidence establishes without dispute that Officer Tolen was an independent contractor, and not an employee of Jax Lanes." (Doc. No. 38, p. 7.) Therefore, Jax Lanes continues, Counts VII and VIII "fail as a matter of law." (*Id.*) In short, Mr. Perkins disagrees. (Doc. No. 47, pp. 29-35.)

The Florida Supreme Court has adopted the test in the Restatement section 220 for determining whether an employment relationship exists. *See Cantor v. Cochran*, 184 So. 2d 173 (Fla. 1966); *Miami Herald Publ'g Co. v. Kendall*, 88 So. 2d 276 (Fla. 1956); *Magarian v. S. Fruit Distribs.*, 146 Fla. 773, 1 So. 2d 858 (Fla. 1941); *see also Kane Furniture Corp. v. Miranda*, 506 So.2d 1061 (Fla. 2d DCA 1987). The Restatement sets forth a nonexclusive list of factors that are relevant to making the judgment whether a particular relationship is an employment (servant) relationship or an independent contractor relationship:

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(I) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

> The "extent of control" referred to in Restatement section 220(2)(a) has been recognized as the "most important factor in determining whether a person is an independent contractor or an employee." *Kane Furniture*, 506 So.2d at 1064.

*Harper ex rel Daley v. Toler*, 884 So. 2d 1124, 1130-31 (Fla. 2d DCA 2004); *see also Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011) ("The essence of the common law's test for whether an agent is an employee or an independent contractor is the control of details; that is, whether the principal has the right to control the manner and means by which the agent accomplishes the work.") (internal citation omitted).

> [A]ssessing whether a principal had the right of control is highly fact-dependent and a variety of considerations may be probative. These considerations include: (1) direct evidence of the principal's right to or actual exercise of control; (2) the method of payment for the agent's services, whether by time or by the job; (3) whether or not the equipment necessary to perform the work is furnished by the principal; and (4) whether the principal had the right to fire the agent.

*Langiftt*, 647 F.3d at 1121.

In the instant case, the evidence shows that that the JSO's secondary employment office schedules the officers for work at private businesses. (Tolen Dep. 20:3-9; 120:5-121:8, Feb. 16, 2011.) Should they wish to work secondary employment, the officers would submit their availability to the secondary employment office for approval. (*Id.* at 20:3-24.) Normally, every off duty position has its own scheduler. (*Id.* at 21:16.) Harvey Baker, another police officer, was the scheduler for Jax Lanes at the relevant time. (*Id.* at 21:21-22:7 ("And so his job is to get people to work at Jax Lanes; you know, to make sure that they have somebody there when they need an officer.")); (DiLorio Dep. 64:22-

65:3, Apr. 20, 2011.) The record also shows that the JSO decides how many secondary employment hours an officer may work. (Tolen Dep. 27:16-28:2.)

To govern the officers' behavior, the JSO has issued an operational order on secondary employment. (*Id.* at 26:19-27:3.) Additionally, Officer Tolen testified that other JSO operational orders and policies apply to the police officers just the same while working off duty as well as during regular assignments. (*Id.* at 28:3-20.)

In his deposition, Officer Tolen testified that he always receives 1099 tax forms from Jax Lanes. (*Id.* at 117:16-24.) Jax Lanes pays Officer Tolen directly on an hourly basis, and it additionally pays a fee to the JSO for use of its equipment, training, police vehicle, and gas. (*Id.* at 122:15-123:7.) Officer Tolen does not receive any employee benefits through his secondary employment at Jax Lanes. (*Id.* at 123:24-25.) Finally, he testified that he is an independent contractor and not an employee of Jax Lanes. (*Id.* at 123:16-21); (*see also* DiLorio Dep. 20:6-7 ("He is an independent contractor in uniform working at Jax Lanes.").)

> Describing his typical work day at Jax Lanes, Officer Tolen stated:
>
> I . . . go around and check all the different areas, talk to whoever the manager is, check with the snack bar and make sure they don't have any problems; go in and talk with people at the bar and make sure they don't have any problems; if there's something I need to be made aware of that's going on at the bowling alley, some people I need to . . . be made aware of, or something, if they were causing problems earlier in the day . . . just basically do that.
>
> I usually walk the floor . . . ; make sure nobody's like leaving a stray purse or a cell phone . . . behind, and they're not paying attention to it or something along that line.
>
> [I] check the doors and make sure that nobody's outside drinking, nobody's outside with bowling shoes.

(Tolen Dep. 32:23-33:21.)  Additionally, he testified that he does not need to "check in" with anyone when he arrives to work, "it's not like a time card or something that [he] ha[s] to stamp . . . to sign off saying that [he has] arrived . . . ." (*Id.* 35:7-25.)  Finally, Officer Tolen testified in no uncertain terms that nobody at Jax Lanes tells him how to do his job. (*Id.* at 41:10-43:4.)

Other than provide misconstrued excerpts of Officer Tolen's deposition testimony, Mr. Perkins has not met his burden to show that there is a genuine issue as to whether Officer Tolen is an independent contractor of Jax Lanes.  The Court finds Mr. Perkins's reliance on *McWain v. Greyhound Lines, Inc.*, 357 So. 2d 780 (Fla. 3d DCA 1978) and *Cirou v. Basler*, 432 So. 2d 628 (Fla. 3d DCA 1983) misplaced.

Here, simply, the record is devoid of any evidence disputing Officer Tolen's testimony.  Applying the relevant law, the Court finds that no reasonable jury could find that Officer Tolen was an employee of Jax Lanes when he arrested Mr. Perkins in the early hours of January 20, 2008.  It is undisputed that Officer Harvey Baker coordinated the staffing effort for Jax Lanes, determining the number of officers, and approving the hours worked.  In addition, the record is uncontroverted that Jax Lanes had no control over law enforcement decisions made by Officer Tolen or of the means by which he performed his work.  Therefore, the Court **GRANTS** Jax Lanes's Motion for Final Summary Judgment on Counts VII and VIII of the First Amended Complaint.

## IV.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Jax Lanes, Inc.'s Motion for Final Summary Judgment (Doc. No. 38) in its favor on Counts IV, VII, and VIII is **GRANTED** in its entirety.

2. The Clerk shall enter a final judgment providing that Plaintiff Larue Perkins shall take nothing on his claims against Defendant Jax Lanes, Inc. The judgment shall further provide that Jax Lanes, Inc. shall recover its costs of action.

3. The Clerk is directed to terminate Jax Lanes, Inc. as a defendant in this case.

**DONE** and **ORDERED** in Jacksonville, Florida on May 10, 2012.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties