# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

LARUE PERKINS,

            Plaintiff,

-vs-                                Case No:  3:10-cv-851-J-37TEM

ROBERT TOLEN, individually; JOHN
RUTHERFORD, in his official capacity as
Sheriff of the Consolidated City of
Jacksonville, Florida; and JAX LANES,
INC.,

            Defendants.

_____/

## ORDER

This cause comes before the Court on the following motions:

1. Defendant John Rutherford's ("Rutherford") Motion for Final Summary Judgment and Supporting Memorandum of Law (Doc. No. 33), filed on January 27, 2012;

2. Defendant Officer Tolen's Motion for Summary Judgment With Incorporated Memorandum of Law (Doc. No. 41), filed on February 1, 2012;

3. Defendant Robert Tolen ("Officer Tolen") and Rutherford's Joint Motion to Disqualify Plaintiff Larue Perkins's ("Mr. Perkins") Expert (Ronald Lynch) (Doc. No. 35), filed on January 27, 2012; and,

4. Defendants' Joint Motion to Stay Proceedings (Doc. No. 83), filed on May 23, 2012.

Mr. Perkins's responses (Doc. Nos. 46 and 47) have been timely filed and were considered in the Court's conclusions set forth below.  The Court ruled on most issues presented in the above-listed motions during the final pretrial conference held before the undersigned on May 14, 2012.  This written order enters for purposes of clarification so there can be no misunderstanding between the parties, and to rule on any issues that remain pending.

## I.   BACKGROUND[1]

This action arises out of events that transpired on January 19, 2008.  That night around 9:30 p.m., Mr. Perkins, his wife, and a group of friends took a taxi cab to the bowling alley operated by Jax Lanes, Inc.  Upon arrival, but after changing into their bowling shoes, Mr. Perkins, his wife, and two other friends stepped outside a side door to have a smoke.  It was then that a young bowling alley employee approached them to say that they were not supposed to wear the bowling shoes outside.  According to Mr. Perkins, he apologized and the group immediately went back inside.

Moments later, Defendant Officer Tolen approached the group stating, "Don't you know I can fucking take your asses to jail for going outside with the bowling shoes on? You fucking can't read the sign?"  (Perkins Dep. 87:7-12, Feb. 25, 2011.)  Mr. Perkins maintains that he responded apologetically that he had not seen the sign.  (*Id.* at 87:21-

---

[1] The following factual allegations are derived from Mr. Perkins's Consolidated Response to Defendants' Motions for Summary Judgment.  (*See* Doc. No. 47, pp. 2-4.) The actual facts may be different than those stated here.  *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]acts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.  Nevertheless, for summary judgment purposes, [the] analysis must begin with a description of the facts in the light most favorable to the plaintiff.") (citation and internal quotation marks omitted).

22.)  According to Mr. Tucker, one of Mr. Perkins's friends in attendance, Officer Tolen's demeanor was "very obnoxious" and "belligerent."

After a couple of rounds of bowling, someone in the group called a taxi.  While waiting for it outside, Mr. Perkins, his wife, and Mr. Tucker saw an individual run out of the bowling alley, jump in a car, and duck down.  A bowling alley employee immediately followed and yelled that someone had stolen a purse.  According to Mr. Perkins, he informed the employee in which car the purse snatcher had hidden.  Shortly thereafter, three of the four police cars entered the parking lot and Mr. Perkins, along with his wife and Mr. Tucker, returned into the bowling alley to check on the rest of their party.

Just as the group gathered to leave, a fight broke out on the west side of the bowling alley.  Hearing some racial slurs being exchanged, Mr. Tucker exclaimed, "[y]ou're not going to kick this cracker's ass tonight"[2] just as he was making his way through the door.  (Perkins Dep. 97:21.)  Overhearing this, a tall, white officer asked Mr. Tucker if there was a problem; Mr. Tucker responded that he was leaving.

At this point, the party's taxi cab had arrived and was waiting for them in the parking lot.  As they walked towards the cab, Mr. Perkins heard Officer Tolen commenting to the tall, white officer, "That's them young punks I had a problem with earlier."  (*Id.* at 103:10.)  Thinking Officer Tolen was referring to the earlier encounter regarding the bowling shoes, Mr. Perkins turned around, again apologized to Officer Tolen, and continued walking towards the taxi.  According to Mr. Perkins, Officer Tolen

---

[2] Mr. Perkins is an African-American.  Everyone else in the group was white. (Perkins Dep. 99:3-6.)

then told him to "take [his] ass home." (*Id.* at 104:16.) Mr. Perkins again turned around and told Officer Tolen that he indeed was leaving and going home.

Crediting Mr. Perkins's version of the facts, Officer Tolen followed Mr. Perkins to the taxi, and as he was entering the vehicle – with his back turned to Officer Tolen and one foot up in the cab – he heard Officer Tolen say "that's it," and within seconds, Officer Tolen grabbed and slammed Mr. Perkins to the ground face first. (*Id.* at 105:4-7; *see also* Tucker Dep. 68:10-16, June 20, 2011.) After slamming Mr. Perkins to the ground, Officer Tolen placed his knee on Mr. Perkins's back and handcuffed him. Mr. Perkins maintains that he did not resist Officer Tolen. He was arrested for trespassing, resisting an officer without violence, and disorderly intoxication.

After Mr. Perkins was transported to jail by another officer, the intake nurse refused his admission for medical reasons and he was immediately transported to Shands Hospital. Mr. Perkins's injuries consisted of a broken jaw requiring it to be wired shut for six weeks, and several broken teeth requiring dental surgery.

In his First Amended Complaint, Mr. Perkins alleges the following federal claims pursuant to Title 42, United States Code, Section 1983: False Arrest in violation of the Fourth Amendment to the United States Constitution ("Constitution") against Officer Tolen in his individual capacity (Count I); Excessive Force in violation of the Fourth Amendment to the Constitution against Officer Tolen in his individual capacity (Count II); Municipal Liability against Defendant Rutherford in his official capacity[3] (Count III); and, Conspiracy

---

[3] A suit against a public official in his official capacity is treated as a suit against the local government entity he represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1270 (11th Cir. 2005).

to Violate Civil Rights against Officer Tolen and Jax Lanes (Count IV).  In addition to the federal claims, Mr. Perkins also alleges the following state law claims: False Imprisonment against Defendant Rutherford (Count V); Battery against Defendant Rutherford (Count VI); False Imprisonment against Defendant Jax Lanes (Count VII); and, Battery against Defendant Jax Lanes (Count VIII).  (*See generally* Doc. No. 26.)[4] Presently, all Defendants seek entry of summary judgment in their favor on the respective counts alleged against them.  To these motions the Court now turns.

## II.    STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party.  *Fennell,* 559 F.3d at 1216 (citing *Forman*, 509 F.3d at 1356).  A moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

---

[4] In its November 17, 2011 Order, the Court dismissed with prejudice Mr. Perkins's negligence claim (Count IX) against Jax Lanes, Inc.  (*See* Doc. No. 31.)  In addition, in its May 10, 2012 Order, the Court granted summary judgment in favor of Jax Lanes on Counts IV, VII, and VIII.  (*See* Doc. No. 72.)

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (stating "conclusory allegations without specific supporting facts have no probative value"). This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the [C]ourt must deny the motion and proceed to trial." *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983)).

## III.   ANALYSIS

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 is merely a vehicle by which to bring these suits; it does not create any substantive federal rights," and "[t]herefore, the plaintiff must point to a specific federal right that the defendant violated." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007) (internal citation omitted).

- 6 -

"To state a claim under . . . § 1983, a plaintiff must allege that (1) the defendant deprived him [or her] of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citing *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001) and *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)).

## A. Defendant John Rutherford's Motion for Summary Judgment

Defendant Rutherford moves for summary judgment in his favor on Counts III, V, and VI of the First Amended Complaint. (*See generally* Doc. No. 33.) As to Count III, Rutherford argues that he is entitled to summary judgment because the facts in the record do not support *Monell* liability regardless of any unconstitutional act by Defendant Officer Tolen. (*Id.* at 7-8.) As to Counts V and VI, Rutherford argues that the state law tort claims against him are barred by operation of law. (*Id.* at 18.) The Court turns to the federal claim first.

### 1. Count III: Municipal Liability

In *Monell v. [Department of Social Services] of New York*, the Supreme Court rejected the proposition that municipalities can be held liable under the doctrine of *respondeat superior*. 436 U.S. 658, 694 . . . (1978). Instead, a Plaintiff is required to show that the Constitutional injury alleged was the result of a custom or policy. *Id.* Where no stated policy exists, a Plaintiff must show that there was a pattern of deliberate indifference that is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 . . . (1997); *see also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011). As a final alternative, a custom or policy may be inferred from a single decision, or ratification of a subordinate's decision, by the highest officials responsible for setting policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 . . . (1988).

*Miller v. Eslinger*, No.: 6:10-cv-1221-Orl-31KRS, 2011 WL 4481260, *3 (M.D. Fla. Sept. 27, 2011).

In his response to Rutherford's motion for summary judgment, Mr. Perkins argues that the JSO policy or custom of failing to investigate claims of excessive force and failing to discipline the officers for the improper use of force was the moving force behind Officer Tolen's false arrest and use of excessive force on Mr. Perkins.  (Doc. No. 47, p. 25.) Rutherford argues that these grounds cannot hurdle summary judgment.  (Doc. No. 52.)

First, Mr. Perkins argues that the JSO failed to promptly act on his complaint filed within days after the incident.  (Doc. No. 47, p. 23 (submitting that his complaint was not investigated until almost three years after it was filed).)  This fact, contends Mr. Perkins, supports a finding of a "custom" within the JSO to inadequately address allegations of excessive force and of condoning the same.  (*Id.* at 23-24.)  Second, Mr. Perkins submits that JSO's handling of the incident involving Bryan Barnes further evidences the "custom" of inadequate investigation and failure to discipline.  (*Id.* at 24.)  According to Mr. Perkins, Mr. Barnes's complaint with the JSO was not investigated until six years after his incident had occurred.  (*Id.* at 25.)  Moreover, in both cases, the JSO concluded that the complaints were "not sustained."  (*Id.*)

Finally, Mr. Perkins notes that JSO's "Response to Resistance Policy" ("RTR") in effect at the time of his incident did not require officers to document the type of force used on him.  (*Id.*)  Therefore, argues Mr. Tolen, it follows that the JSO officers knew that no meaningful investigation or discipline would take place.  (*Id.*)  In conclusion, Mr. Perkins contends that "a reasonable inference can be drawn and a jury could find that the Sheriff's Office has a custom of inadequately investigating and failing to discipline officers

involved in such conduct so as to be the moving force behind the deprivation of [Mr.] Perkins'[s] rights." (*Id.* at 26.)

As stated at the pretrial conference, Mr. Perkins's argument falters based upon evidentiary deficiencies and a failure to satisfy the legal elements.  Mr. Perkins failed to provide sufficient evidence of a policy or custom of inadequate investigation of complaints that caused his constitutional injuries.  In support of his argument, he submits two instances of the allegedly inadequate investigations – one concerning himself, and the other concerning Mr. Barnes.  However, the Court finds neither instance sufficient so as to find existence of a "custom" or a "policy" of inadequate investigations and failure to discipline.  In fact, there is no evidence that Mr. Barnes ever filed a complaint with the JSO after his incident.  (*See* Doc. No. 48-7, p. 2 (noting that Barnes never complained to Internal Affairs about allegedly being subjected to excessive force).)  The investigation of his own complaint, only naturally, did not occur until after the incident.  As such, any impropriety of the investigation of his own complaint cannot constitute the requisite direct causal link between a JSO policy and any constitutional deprivation suffered by Mr. Perkins.  *See Terrell v. City of Palm Bay, Fla.*, No. 6:09-cv-1440-Orl-28DAB, 2010 WL 3895618, *5 (M.D. Fla. Oct. 1, 2010).

Additionally, Mr. Perkins failed to present any evidence from which a reasonable jury could adduce that merely not requiring the filing of an RTR Report caused Officer Tolen to allegedly falsely arrest and/or use excessive force on Mr. Perkins.  Further weakening Mr. Perkins's contention, the record shows that at the time of the incident involving Mr. Barnes, the JSO did require filing of RTR Reports in similar circumstances

- 9 -

and indeed did file one in that instance.  (*Id.* at 4-6.)  Therefore, there is no evidence linking the lack of a requirement for filing the RTR Reports and the alleged constitutional violations.

In conclusion, Mr. Perkins failed to present sufficient evidence to create a genuine issue of material fact so as to survive summary judgment on his municipal liability claim. The Court GRANTS Defendant Rutherford's motion for summary judgment as to Count III of the First Amended Complaint.

### 2.  Counts V and VI: State Law Claims

In Counts V and VI, Mr. Perkins alleges state law claims for false imprisonment and battery against Defendant Rutherford.   In his motion for summary judgment, Rutherford argues that these claims are barred by the Florida Sovereign Immunity Statute, Section 768.28, Florida Statutes (2007).  (*See* Doc. No. 33, pp. 13-18.)

In relevant part, Fla. Stat. § 768.28(9)(a) provides: "The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."   Rutherford argues that Mr. Perkins's account of events "can only be viewed as stating that Officer Tolen acted against [Mr. Perkins] purely out of spite and/or anger toward [Mr. Perkins] and his party, *i.e.*, in bad faith or in a wanton and willful and/or malicious manner." (Doc. No. 33, p. 17.) Therefore, Rutherford submits that the Court should grant summary judgment in his favor on Counts V and VI.

- 10 -

Based on the facts at hand, and viewing the evidence in the light most favorable to the nonmoving party, the Court holds that the question of whether Officer Tolen acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, must be put to the fact-finder.  As mentioned on the record at the pretrial conference, the Court found Judge Covington's opinion rendered in *Perkins v. City of Jacksonville Beach*, No. 3:06-cv-486-J-33MCR, 2007 WL 1796269, at *4-5 (M.D. Fla. June 21, 2007) and the Florida Supreme Court opinion rendered in *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996) particularly instructive on this issue.  Rutherford's motion as to Counts V and VI is DENIED.

### B. Defendant Officer Tolen's Motion for Summary Judgment (Doc. No. 41)

Officer Tolen is a JSO police officer who was, at the relevant time, working in a secondary employment capacity for Jax Lanes, Inc.  Among others, Mr. Perkins is bringing Section 1983 claims alleging that Officer Tolen violated his Fourth Amendment right to be free from unreasonable seizure by falsely arresting him and by using excessive force that caused him serious injuries.  Officer Tolen argues that the Court should grant summary judgment in his favor as he is entitled to the defense of qualified immunity and is protected from suit under the present circumstances.

"Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To receive qualified immunity, the officer must first show that he acted within

- 11 -

his discretionary authority." *Id.* Here, there is no assertion that Officer Tolen was not acting within his discretionary authority at the time of the events at issue. Thus, "the burden . . . shifts to [Mr. Perkins] to show that qualified immunity should not apply." *Id.*

> To do so, [Mr. Perkins] must meet the two-part standard recently reaffirmed by the Supreme Court [of the United States] in *Pearson v. Callahan*, 555 U.S. 223 [. . .] (2009). First, [Mr. Perkins] must allege facts that establish that the officer violated [his] constitutional rights; and second, [Mr. Perkins] must also show that the right involved was "clearly established" at the time of the putative misconduct. *See id.* at 232 [. . .]. This inquiry is "undertaken in light of the specific context of the case, not as a broad general proposition." *Lee* [*v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)]. In *Pearson*, the Supreme Court concluded that a court may assess these factors in any order. 555 U.S. at 236 [. . .].

*Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012); *see Lee*, 284 F.3d at 1194 ("If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine whether the right was clearly established.") (internal citation and quotation marks omitted). If the plaintiff's version of the facts is "blatantly" contradicted by the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court conducts this two-prong analysis separately for each of Officer Tolen's qualified immunity claims.

### 1.  False Arrest

Officer Tolen argues that he should be entitled to qualified immunity on the false arrest claim because he had probable, or at the very least, arguable probable cause to arrest Mr. Perkins. (*See generally* Doc. No. 41.)  Mr. Perkins disagrees. (*See* Doc. No. 47, pp. 7-13.)

"An arrest is quintessentially a seizure of the person, and therefore subject to the Fourth Amendment's reasonableness requirement." *McClish v. Nugent*, 483 F.3d 1231, 1238 (11th Cir. 2007); *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).  Whether a seizure by an arrest was "reasonable" turns on a finding of probable cause.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).  "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim."  *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).  "For probable cause to exist, both federal and Florida law say that an arrest must be objectively reasonable based on the totality of the circumstances."  *Lee*, 284 F.3d at 1195 (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.* (internal quotation marks and citation omitted).  "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (internal quotation marks and citation omitted).  "Even 'seemingly innocent activity' can be the basis for probable cause."  *Id.* (internal citation omitted).

Even if a constitutional violation occurred because the officer lacked probable cause, qualified immunity may be applicable to the arresting officer if <u>arguable</u> probable cause exists.  *Lee*, 284 F.3d at 1195 (internal citation omitted); *see Case*, 555 F.3d at 1327 ("The officer may still be shielded from liability because his actions did not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks and citation omitted).  "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest.' " *Lee*, 284 F.3d at 1195 (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)) (brackets in original); *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993) (noting that in false arrest cases, an officer is entitled to summary judgment based upon qualified immunity "if a reasonable officer could have believed that probable cause [for the arrest] existed") (internal quotation marks and citation omitted).  "In determining whether arguable probable cause exists, [the courts] apply an objective standard, asking whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation." *Lee*, 284 F.3d at 1195 (ellipsis in original) (internal quotation omitted).

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime . . . and the operative fact pattern." *Skop*, 485 F.3d at 1137-38.  Officer Tolen arrested Mr. Perkins for the following crimes: trespass after warning, disorderly intoxication, and resistance without violence. (Doc. No. 34, Ex. 3.)  If Officer Tolen possessed probable cause or arguable probable cause to arrest Mr. Perkins for any one of the crimes, he is entitled to qualified immunity as to the false arrest claim.

Trespass After Warning

Section 810.09, Florida Statutes (2007) is titled "Trespass on property other than structure or conveyance."  Mr. Perkins was arrested for violating subsection (2)(b) of the statute, which states in relevant part: "[i]f the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person . . . or trespasses on property other than a structure or conveyance, the offender commits a misdemeanor of the first degree . . . ."  Subsection (1)(a) states: "A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance . . . commits the offense of trespass . . . ."

Officer Tolen argues that it is clear that Mr. Perkins committed a violation of trespass after warning.  (Doc. No. 41, p. 10.)  Under Mr. Perkins's version of the events, however, the Court concludes that a reasonable officer could not have conceivably thought that he had probable cause or even arguable probable cause to arrest Mr. Perkins.  Plainly, Mr. Perkins did not willfully remain on the property nor did he defy an order to leave.

While Mr. Perkins was walking towards the taxi cab, it is undisputed that Officer Tolen told Mr. Perkins to go home.[5]  It is also undisputed that on two occasions Mr. Perkins turned around and talked to the officer.  However, the Court is not prepared to find that Mr. Perkins's brief and amicable exchange with the officer provided a basis for arrest under the circumstances as described by Mr. Perkins.  The crux of the matter is that on Mr. Perkins's view of the facts, he was leaving the bowling alley and was about to

---

[5] The manner in which this was communicated to Mr. Perkins remains in dispute.

enter the cab when Officer Tolen arrested him.   Viewing the record in the light most favorable to Mr. Perkins, the Court finds that Officer Tolen did not have either probable or arguable probable cause to arrest Mr. Perkins for trespass after warning.

Disorderly Intoxication

Section 856.011(1), Florida Statutes (2007) provides: "No person in the state shall be intoxicated and endanger the safety of another person or property, and no person in the state shall be intoxicated or drink any alcoholic beverage in a public place or in or upon any public conveyance and cause a public disturbance."   According to Mr. Perkins, on January 19, 2008, he had two cans of beer prior to leaving to King's Bay at around 6:00 p.m.   (Perkins Dep. 81:4-16.)   During the two rounds of bowling, from around 10 p.m. to midnight, he had an additional four cups of beer.   (*Id.* at 91:1-3.)   Mr. Perkins asserts that neither he nor anyone else in his party was intoxicated that night.   (*Id.* at 163:8-11.)   While he undisputedly drank alcoholic beverages, crediting Mr. Perkins's version of the events, he did not cause a disturbance nor did he endanger the safety of any person or property.   On the contrary, before the taxi cab arrived he assisted the bowling alley employee in finding the purse snatcher.   Once the taxi arrived, he and his party walked toward it.   Viewing the evidence in the light most favorable to Mr. Perkins, Officer Tolen did not possess probable cause or arguable probable cause to arrest Mr. Perkins for disorderly intoxication.

Resisting an Officer Without Violence

Section 843.02, Florida Statutes (2007) in relevant part provides:

Whoever shall resist, obstruct, or oppose any officer . . . or other person legally authorized to execute process in the execution of legal process or in

> the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .

"In other words, to support a conviction for obstruction without violence, the [government] must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185-86 (Fla. 2009).

Officer Tolen submits that he had arguable probable cause to arrest Mr. Perkins after he asked Mr. Perkins to leave – first on the public announcement system, next through a fellow officer, and twice in the parking lot – and he failed to do so. (Doc. No. 41, p. 13.)   The Court, having to view the evidence in the light most favorable to Mr. Perkins, finds that under his version of events, Mr. Perkins was not obstructing or resisting Officer Tolen.  With his one foot stepping in the cab and his back turned to Officer Tolen, Mr. Perkins maintains that Officer Tolen bear-hugged him and slammed him to the concrete ground.  Therefore, Officer Tolen did not possess probable cause or arguable probable cause to arrest Mr. Perkins for resisting without violence.

<u>Refusal to Disperse</u>

Although Officer Tolen did not arrest Mr. Perkins for this crime, in his motion for summary judgment Officer Tolen argues that he had probable cause to arrest Mr. Perkins for failure to disperse.  Section 614.118 of the Jacksonville Municipal Code provides:

> It shall be unlawful and a class D offense for a person to refuse to remove himself from the vicinity after being requested to do so by a police officer engaged in the execution of his legal duty, where three or more persons are

- 17 -

> engaged in conduct in the vicinity, which conduct is causing or is reasonably likely to cause violence, disorder, or breach of the public peace.

Again, as stated above, crediting Mr. Perkins's version of the events, he did not refuse to remove himself from the vicinity. Instead, he was in the process of leaving the bowling alley; more specifically, he was entering the cab when Officer Tolen approached him from behind and slammed him to the concrete ground. There can be no arguable probable cause to arrest Mr. Perkins for failure to disperse under that set of facts.

Based on the above analysis, the Court concludes that Officer Tolen did not possess probable cause or arguable probable cause to arrest Mr. Perkins. Therefore, Officer Tolen is not entitled to qualified immunity under Mr. Perkins's version of the events, and the Court DENIES Officer Tolen's motion for summary judgment as to Count I.

### 2. Excessive Force

Mr. Perkins also alleges that Officer Tolen's use of force constituted excessive force in violation of the Fourth Amendment. This claim is "properly analyzed under the Fourth Amendment's 'objective reasonabless' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Whether the use of force is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' " *Terrell v. Smith*, 668 F.3d 1244, 1250-51 (11th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

> In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate.

*Id.* at 1251 (internal citation and quotation marks omitted).  To determine whether the force applied was reasonable, the courts examine: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396.

Because the Court denied Officer Tolen's motion for summary judgment on the basis of qualified immunity on the false arrest claim, the Court need not independently analyze Mr. Perkins's excessive force claim.  "[U]nder Eleventh Circuit law, 'a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.' "  *Lee*, 284 F.3d at 1193 (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000).  However, even if the Court granted Officer Tolen's motion, the Court would have found that, accepting Mr. Perkins's version of the events as true, Officer Tolen's use of force under these circumstances was excessive.  Examining the *Graham* factors, the crimes for which Mr. Perkins was arrested are not severe; Mr. Perkins did not pose an immediate threat to the safety of the officers or others; and Mr. Perkins was not actively resisting arrest or attempting to evade arrest by flight.  Simply, Mr. Perkins was promptly leaving the bowling alley and apologetically addressing Officer Tolen.  Therefore, even if the Court found that Officer Tolen is entitled to qualified immunity from suit on the false arrest claim, the Court would have found that he is not entitled to it on the excessive force claim.

### C. Defendants' Joint Motion to Disqualify Plaintiff's Expert (Doc. No. 35)

Defendants Rutherford and Officer Tolen join in moving the Court to disregard and preclude Ronald Lynch, Mr. Perkins's expert, from testifying because his proposed testimony does not satisfy the requirements of Fed. R. Evid. 702.  (Doc. No. 35.)  Rule 702 sets out the following requirements for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and method to the facts of the case.

Fed. R. Evid. 702.

Under this rule of evidence and the Supreme Court decision governing its application, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), district courts must act as "gatekeepers," admitting expert testimony only if it is both reliable and relevant, to prevent speculative and unreliable testimony from reaching the jury.  *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  In playing this role, the district court must consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562-63 (11th

- 20 -

Cir. 1998) (footnote omitted).  The party offering the expert bears the burden of satisfying each of the three elements by a preponderance of the evidence.  *Rink*, 400 F.3d at 1292.

Regarding the second criterion, "[t]o assess the reliability of an expert opinion, the court considers a number of factors, including those listed by the Supreme Court in *Daubert*:

> (1) whether the expert's theory can be or has been tested;
> (2) whether the theory has been subject to peer review and publication;
> (3) the known or potential rate of error of the particular scientific technique; and
> (4) whether the technique is generally accepted in the scientific community."

*United States v. Abreu*, 406 F.3d 1304, 1306-07 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004)).  However, these listed factors "are only illustrative and may not all apply in every case."  *Id.* at 1307.  In any event, "[t]he district court has wide latitude in deciding how to determine reliability."  *Id.*  Regarding the third criterion, whether the expert testimony will be helpful,

> [t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Fed. R. Evid. 702, Advisory Committee Notes (internal citation and quotation marks omitted).

In his expert report,[6] Mr. Lynch offers two opinions:

> These opinions are based upon the expert's education, experience, research and materials reviewed.

---

[6] After review of Mr. Lynch's Rule 26 expert report, the Court must note its bare bone nature and, although not argued by Defendants, its noncompliance with Fed. R. Civ. P. 26.

- 21 -

The *first opinion* is that Officer Tolen did not have arguable probable cause to arrest the Plaintiff and used excessive force in his dealing with the Plaintiff.  The Plaintiff had not committed any crimes and was obeying Officer Tolen.

The *second opinion* is that police officers are trained to use restraint in such incidents.  In this case, Officer Tolen appears to have strong personal feelings against the Plaintiff and acted on these feelings.  According to the Plaintiff, Officer Tolen said "these are the punks I was dealing with earlier.["]

(Doc. No. 35, Ex. A.)  Defendants submit that Mr. Lynch's first opinion that Officer Tolen did not have arguable probable cause to arrest Mr. Perkins and that he used excessive force in dealing with him lacks a reliable basis and should be excluded as mere *ipse dixit*. (*Id.* at 5.)  As to the second opinion, Defendants argue that it is simply a statement of fact; it proffers no opinion and is mere conclusion at best.  (*Id.*)  Similarly, both opinions, continue Defendants, are unhelpful to the jury – thereby failing the third prong of the *Daubert* analysis.  (*Id.* at 5-7.)  Additionally, even if admissible, Defendants contend that Mr. Lynch's testimony should be excluded pursuant to Fed. R. Evid. 403, as "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."  (*Id.* at 5 (citing Fed. R. Evid. 403).)

For the reasons expressed at the final pretrial conference, the Court GRANTS in part and DENIES in part Defendants' motion.  The Court GRANTS the motion to the extent that Mr. Lynch is not permitted to testify, nor is Mr. Perkins's counsel allowed to elicit testimony, regarding Officer Tolen's personal feelings toward Mr. Perkins without first having such evidence admitted through another witness or in a different manner.  Furthermore, the Court DENIES the motion to the extent that Mr. Lynch is permitted to

testify, based on his education, experience, and review of the relevant materials in this case, as to the police officers' training to use restraint.

At the pretrial conference, the Court reserved its ruling on the issue of whether Mr. Lynch should be permitted to testify regarding arguable probable cause and excessive force.  The Court now finds that any testimony as to the force used shall be limited by the contours of the Eleventh Circuit's opinion in *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (1990).  At trial, Mr. Perkins's counsel shall craft their questioning of this expert witness in compliance with the same.

After its independent research on this issue, the Court was unable to find any persuasive, not to mention mandatory, authority that would allow Mr. Lynch to testify that Officer Tolen did not possess arguable probable, or actual probable, cause.  Unless the parties resolve this issue on their own prior to trial, before opening statements counsel shall be prepared to address this issue by presenting legal authority.  The Court hereby reserves its ruling on this limited issue until trial.

### CONCLUSION

Based on the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant John Rutherford's Motion for Final Summary Judgment and Supporting Memorandum of Law (Doc. No. 33), filed on January 27, 2012 is **GRANTED in part** and **DENIED in part**.  The motion is granted as to Count III and denied as to Counts V and VI.  The Clerk shall enter judgment in favor of Defendant John Rutherford and against Plaintiff Larue Perkins on Count III of

the First Amended Complaint.   Rutherford shall recover its costs of action as they relate to Count III.

2. Defendant Robert Tolen and Rutherford's Joint Motion to Disqualify Plaintiff Larue Perkins's Expert (Ronald Lynch) (Doc. No. 35), filed on January 27, 2012 is **GRANTED in part** and **DENIED in part** as set forth herein.

3. Defendant Robert Tolen's Motion for Summary Judgment With Incorporated Memorandum of Law (Doc. No. 41), filed on February 1, 2012 is **DENIED** in its entirety; and

4. In light of the Interlocutory Appeal of the Court's denial of Robert Tolen's summary judgment motion, the Court **GRANTS** Defendants' Joint Motion to Stay Proceedings (Doc. No. 83), filed on May 23, 2012.   The case shall be **STAYED** and all deadlines terminated pending the Eleventh Circuit's ruling.

**DONE** and **ORDERED** in Jacksonville, Florida on June 1, 2012.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties